UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LaFREDA D. GAVIN,

                Plaintiff,

-vs-                                                Case No. 5:03-cv-96-Oc-10GRJ

STATE OF FLORIDA DEPARTMENT OF
CORRECTIONS, SUMTER
CORRECTIONAL INSTITUTION,

                Defendants.
_____

**O R D E R**

In this Title VII action, the Plaintiff, LaFreda Gavin, proceeding pro se, alleges that the Defendant, The State of Florida Department of Corrections, Sumter Correctional Institution, discriminated against her in her employment on the basis of her race (African-American).[1] More specifically, the Plaintiff alleges that the Defendant created a racially hostile work environment, retaliated against her for engaging in protected activities, and ultimately terminated her because of her race. The case is before the Court on the Defendant's motion for summary judgment (Doc. 44). The Plaintiff has failed to respond to

---

[1] The Plaintiff's claims under 42 U.S.C. §§ 1981 and 1983 were previously dismissed with prejudice for lack of subject matter jurisdiction, and her prayer for punitive damages was stricken (Doc. 12). The Court initially read the complaint as asserting claims for sex discrimination; however, upon further review of the complaint, it is apparent that the Plaintiff alleges racial discrimination only.

the Defendant's motion, and the time for doing so has elapsed.[2] Upon due consideration and for the following reasons, the Court concludes that the Defendant's motion for summary judgment is due to be granted in all respects.

## Background and Facts

This action arises out of the Plaintiff's employment with the Defendant as a teacher at the Sumter Correctional Institution. In her complaint (Doc. 1), which is actually two complaints filed together, the Plaintiff alleges that she was repeatedly harassed by her supervisor, Dr. Roger Smith, a white male, and subject to different terms and conditions of employment than were non-African American employees. In particular, the Plaintiff alleges that because of her race she was (1) subjected to a search of her classroom by security personnel, (2) denied access to a professional development course that a less qualified white co-worker was permitted to attend, (3) not permitted to administer a basic education test that whites were permitted to administer, and (4) not taken to lunch by Dr. Smith. She further alleges that two of her co-workers caused erroneous incident reports to be filed against her and that she was denied a predetermination conference in which to answer the charges. The Plaintiff also alleges that Dr. Smith intentionally created a hostile work environment by allowing or encouraging other staff members to join in his harassment

---

[2] The Defendant has also filed a motion for involuntary dismissal (Doc. 43) of the Plaintiff's claims for failure to comply with the Court's orders, local rules, the Federal Rules of Civil Procedure, and for failure to prosecute. Although the motion to dismiss appears to have merit, the Court need not rule on it because the Court concludes that the motion for summary judgment is due to be granted in all respects.

of her. Lastly, the Plaintiff alleges that she was terminated because of her race or in retaliation for her complaints of discrimination.

In support of its motion for summary judgment, the Defendant argues that (1) the Plaintiff has not presented evidence that similarly situated non-African-American employees were treated more favorably, (2) most of the Plaintiff's allegations of disparate treatment are not actionable under Title VII, (3) the Plaintiff cannot establish a *prima facie* case of a racially hostile work environment, and (4) there were legitimate, non-discriminatory and non-retaliatory reasons for terminating the Plaintiff's employment.

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party."[3] As the Supreme Court held in Celotex Corp. v. Catrett, the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.[4] If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with

---

[3] Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).

[4] 477 U.S. 317 (1986).

"sufficient evidence of every element that he or she must prove."[5]  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

## **Discussion**

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ."[6]  In a Title VII case, the plaintiff bears the burden of proving that the employer intentionally discriminated against her because of her race.[7] A Title VII plaintiff can prove discriminatory intent by either direct or circumstantial evidence.[8] In a circumstantial case, a plaintiff may prove her case of racial discrimination by following the burden-shifting framework established by the United States Supreme Court in McDonnell-Douglas Corp. v. Green.[9] Under this framework, a plaintiff may establish a prima facie case by showing (1) she is a member of a protected class, (2) she was qualified for the job or benefit at

---

[5] Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987).

[6] 42 U.S.C. § 2000e-2(a).

[7] See Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997); Cooper v. Southern Co., 390 F.3d 695, 723 (11th Cir. 2004).

[8] Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990).

[9] 411 U.S. 792 (1973).

issue, (3) she was subjected to an adverse employment action, and (4) her employer treated similarly situated employees who were not members of her protected class more favorably.[10] Once a prima facie case is established under the McDonnell-Douglas framework, a presumption of unlawful discrimination arises.[11]

Title VII also contains an anti-retaliation provision, which makes it unlawful for an employer to retaliate against any individual because she "has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[12] In the absence of direct evidence of a retaliatory motive, a plaintiff may establish a *prima facie* case of retaliation under Title VII by showing (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action.[13] Once the plaintiff makes out a *prima facie* case, a presumption of retaliation arises.[14]

The employer may rebut the presumption of wrongdoing by articulating legitimate, non-discriminatory or non-retaliatory reasons for taking the adverse employment action or

---

[10] Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 842-43 (11th Cir. 2000).

[11] Walker v. Prudential Prop. & Cas. Ins. Co., 286 F.3d 1270 (11th Cir. 2002).

[12] 42 U.S.C. § 2000e-3(a).

[13] Stavropoulos v. Firestone, 361 F.3d 610, 616 (11th Cir. 2004).

[14] See Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999). Retaliation is a separate offense under Title VII; an employee need not prove discrimination for the retaliation claim to succeed. Id.

actions.[15] If the employer is successful on this score, the presumption disappears from the case, and the plaintiff is left with the ultimate burden of convincing the factfinder that a discriminatory or retaliatory reason more likely than not motivated the employment action.[16] To avoid summary judgment, however, the plaintiff must produce evidence sufficient to create a genuine issue of fact that the reasons proffered by her employer are merely pretext for unlawful discrimination or retaliation.[17]

***Adverse Employment Actions***

Establishing a *prima facie* case of either disparate treatment or retaliation requires the Plaintiff to demonstrate that she suffered at least one adverse employment action.[18] "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'"[19] "Conduct that falls short of an ultimate employment decision must meet some threshold level of substantiality to be cognizable.

---

[15] Bass v. Bd. of County Comm'rs, Orange County, Fla., 256 F.3d 1095, 1119 (11th Cir. 2001).

[16] Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 n.6 (11th Cir. 2000).

[17] Id.

[18] Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1448 n. 10 (11th Cir. 1998).

[19] Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3rd Cir. 1997)).

. . ."[20] "It is clear, however, that not all conduct by an employer negatively affecting an employee constitutes adverse employment action."[21] "Whether an action is sufficient to constitute an adverse employment action for purposes of a retaliation claim must be determined on a case-by-case basis, using both a subjective and an objective standard."[22] To prove adverse employment action the Plaintiff must show "a *serious and material* change in the terms, conditions, or privileges of employment."[23]

Only the Defendant's decision to terminate the Plaintiff meets the standard articulated above. Each of the Plaintiff's other alleged employment actions are not "serious and material" enough to constitute adverse employment actions.[24] It is undisputed that the

---

[20] Id.

[21] Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238 (11th Cir. 2001).

[22] Gupta, 212 F.3d at 587 (citing Doe, 145 F.3d at 1448-49).

[23] Davis, 245 F.3d at 1238.

[24] The Court notes that the Plaintiff has submitted no documents in this case describing the precise nature of her claims. Therefore, the Court is left to fill in the gaps of her claims by drawing from the allegations in her complaint and by culling factual assertions from her deposition. In so doing, the Court is mindful that "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Malacara v. Garber, 353 F.3d 393, 405 (5th Cir. 2003). The Plaintiff's pro se status does not absolve her of the need to comply with the Federal Rules of Civil Procedure. Although the Court is inclined grant leeway to pro se litigants in employment discrimination suits, this Court does not condone the wholesale abandonment or absolution of the requirements of litigating a case in federal court. The Plaintiff has made little, if any, attempt to prosecute her claims or defend them from adverse resolution. The Plaintiff did not respond to the Defendant's motion to dismiss or motion for summary judgment, has not complied with orders of this Court, has not engaged in discovery of her own, and, to put it mildly, has been less than forthcoming in responding the Defendant's discovery requests. The obligations imposed by the Federal Rules on litigants in federal civil cases are manifold and are all the more difficult for a litigant proceeding pro se to fulfill.
(continued...)

security search of the Plaintiff's classroom was an isolated incident having no effect on the Plaintiff's pay, benefits, or other tangible aspect of the Plaintiff's employment. The fact that Dr. Smith would occasionally treat teachers to lunch in recognition of their professional achievements does not mean it became an employment benefit. Similarly, the fact that the Plaintiff was not permitted to make copies or was frustrated in her attempts to use the copier is simply not an adverse employment action. Dr. Smith's decision not to allow the Plaintiff to administer the basic skills test was not an adverse employment action because there is no evidence that this decision directly impacted any tangible aspect of her employment. Likewise, the Plaintiff has not established that the written or oral reprimands she received, including those resulting from incident reports by co-workers, by themselves resulted in any alteration in her terms or conditions of employment.[25]

Moreover, it is undisputed that the remaining employment actions relied upon by the Plaintiff in support of her claims were corrected after the Plaintiff complained. The Plaintiff testified that after she filed a grievance concerning the decision not to allow the Plaintiff to

---

[24](...continued)
Yet, the degree of leniency exercisable by a court in considering a pro se case is directly related to the degree of effort demonstrably expended by the pro se plaintiff. In this case, there is little obvious effort, and therefore, the Court can only be constrained in its forgiveness of the rules. In other words, if the Court misses something in the record that would help the Plaintiff's case, then it was something the Plaintiff should have pointed out.

[25] To the extent that these written or oral reprimands were relied upon by the Defendant in arriving at the termination decision, any infirmity in the grounds underlying these disciplinary actions, if readily apparent from the record, will be considered in the Court's determination as to whether the Plaintiff has presented a genuine issue of fact that the Defendant's reasons for the termination decision were merely pretextual.

attend the professional development conference in Atlanta an investigation was conducted which resulted in the Plaintiff being allowed to attend the conference.[26] Similarly, when the Plaintiff complained that white teachers were permitted to close their classrooms early on occasion and take time off, the Plaintiff was told that she could do so as well.[27] Finally, when the Plaintiff complained to Dr. Smith that she did not have a cell phone, one was provided to her.[28] Even if these particular occurrences constitute employment actions (which they do not), they cannot be considered adverse because they were corrected before the Plaintiff suffered any real consequence.[29]

Accordingly the only actionable adverse employment action in this case is the Plaintiff's termination.

***Legitimate, Non-Discriminatory and Non-Retaliatory Reasons for the Plaintiff's Termination***

Assuming that the Plaintiff is able to establish a *prima facie* case of disparate treatment and retaliation, the Court concludes that the Plaintiff has failed to come forward with evidence calling into doubt the legitimacy of the Defendant's proffered non-discriminatory and non-retaliatory reasons for terminating her employment.

---

[26] Doc. 47, Deposition of Plaintiff Gavin, at p. 133.

[27] Id. at p. 240.

[28] Id. at p. 218.

[29] See Gupta, 212 F.3d at 588 ("A proposed action that is corrected as soon as the proper official is made aware of it and before it goes into effect, so that the employee does not actually suffer any consequence, is not 'adverse.'").

The Defendant's burden in articulating legitimate reasons for making the adverse employment decision is one of production, not persuasion, and the burden is not difficult to sustain.[30] The Defendant need only produce credible evidence supporting its reasons; it "need not persuade the court that it was actually motivated by the proffered reasons."[31] At the Plaintiff's June 20, 2002 termination meeting, Mr. James Vallandingham, the Program Manager of the Department of Corrections, gave the Plaintiff a dismissal letter listing several reasons for her dismissal: (1) the Plaintiff left inmates unsupervised in her classroom; (2) the Plaintiff left her telephone, computer, confidential file cabinet (which was unlocked), and a confidential inmate file unsecured in her classroom when she left the inmates unsupervised; (3) the Plaintiff mislead Dr. Smith regarding whether an EEOC investigator the Plaintiff met with on her lunch break was representing the Defendant; and (4) the Plaintiff's complete employment records, including performance reviews and previous discipline.[32] The Court concludes that the Defendant has met its burden of producing credible evidence of its legitimate reasons for terminating the Plaintiff.

Once the defendant has articulated one or more legitimate, non-retaliatory reasons the presumption of retaliation is eliminated, and "the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing a prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given

---

[30] Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).

[31] Id.

[32] Doc. 47, exhibit D2.

by the employer were not the real reasons for the adverse employment decision."[33] In so doing, the "plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason."[34] If the Plaintiff fails to proffer sufficient evidence to create a genuine issue of material fact as to whether *each* of the Defendant's proffered reasons is pretextual, the Defendant is entitled to summary judgment.[35]

The Plaintiff has not come forward with evidence sufficient for a reasonable factfinder to conclude that each of the proffered legitimate reasons was merely pretext for unlawful discrimination or retaliation. Indeed, the Plaintiff did not respond to the Defendant's motion for summary judgment. Despite this shortcoming, the Court will examine the Plaintiff's deposition testimony for evidence of pretext. In her deposition, the Plaintiff explained that the phone in her classroom was not operational, that inmates were permitted to use the computers, and that the file cabinet did not have a lock.[36] Further, the Plaintiff denies misleading Dr. Smith about the EEOC investigator. Although this testimony might call into question the legitimacy of *some* of the reasons for discharging the Plaintiff, it does not rebut

---

[33] Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997).

[34] Chapman, 229 F.3d at 1030 (en banc).

[35] Wascura v. City of South Miami, 257 F.3d 1238, 1242, 1243 (11th Cir. 2001).

[36] Doc. 47, Deposition of Plaintiff Gavin, at pp. 231-46.

*each* of the proffered reasons. The Plaintiff does not deny that she left her student inmates unsupervised when she stepped out to use the restroom, nor does she explain why this should be an acceptable practice given that she knew the file cabinet containing confidential information would not lock and that she had a confidential folder on her desk. In the remainder of the Plaintiff's testimony she simply recasts her performance reviews and disciplinary actions as being motivated by unlawful discrimination or retaliation, or otherwise quarrels with the wisdom of those decisions.[37] Because the Plaintiff has failed to create an issue of fact with respect to pretext, her disparate treatment and retaliation claims must fail.

### *Racially Hostile Work Environment*

"A hostile work environment claim under Title VII is established upon proof that the work place is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe and pervasive to alter the terms and conditions of the victim's employment and create an abusive working environment."[38] To establish a *prima facie* case of a racially hostile work environment, the Plaintiff must show five things: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon her membership in the protected group; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create

---

[37] Id. at pp. 183-97.

[38] Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (internal quotations and citations omitted).

an abusive working environment; and (5) the Defendant is responsible for such environment under either a theory of vicarious or direct liability.[39]

As best as can be determined, absent response by the Plaintiff, the racially hostile work environment claim is premised on three incidents of race-based harassment: (1) a joke made by a fellow teacher (a white male) in late 2001, six months before the Plaintiff's termination, that black people's teeth shine at night;[40] (2) a comment made by Dr. Smith in 2000 that people in the Plaintiff's church speak in tongues and use snakes when worshiping;[41] and (3) a comment made by Dr. Smith about the fact that the Plaintiff had changed her hair style from straight to curly.[42] The Court concludes that these allegations are not sufficient to establish a *prima facie* case that a racially hostile work environment existed at the Plaintiff's workplace.[43]

There is no evidence to suggest that the Defendant knew or should have known of the racial joke made by the Plaintiff's co-worker. The Plaintiff testified at her deposition that she did not inform the EEOC or anyone else about the co-worker's insensitive joke.[44] The

---

[39] See, e.g., Id.

[40] Doc. 47, Deposition of Plaintiff Gavin, at pp. 92, 104.

[41] Id. at p. 78-80.

[42] Id. at p. 107-09.

[43] The Court has been unable to find in the record any other incidents that may be considered harassment on the basis of race.

[44] Id. at p. 104.

Plaintiff does not dispute that the Department had an anti-harassment policy and mechanism for reporting harassment in place.[45] "Where the perpetrator of the harassment is merely a co-employee of the victim, the employer will be held directly liable if it knew or should have known of the harassing conduct but failed to take prompt remedial action."[46] There is also no evidence that harassment by the Plaintiff's co-workers was sufficiently severe or pervasive to constitute constructive knowledge on the part of the Defendant.[47] The Plaintiff's testimony that she believed Dr. Smith encouraged others to join in the harassment is not founded on personal knowledge and is insufficient to create a triable issue for the jury.

Moreover, considering the totality of the circumstances, the Court concludes that these isolated incidents were not objectively severe and pervasive enough to alter the terms and conditions of the Plaintiff's employment. In order to be actionable under Title VII, the harassing behavior "must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive."[48] The record evidence simply will not support a finding of that the Plaintiff was subjected to a racially hostile work environment.

---

[45] Id. at p. 105-06.

[46] Miller, 277 F.3d at 1277 (citing Breda v. Wolf Camera & Video, 222 F.3d 886, 889 (11th Cir. 2000)).

[47] Id.

[48] Id. at 1276 (internal quotations omitted).

14

## **Conclusion**

Accordingly, upon due consideration, it is adjudged that:

(1) the Defendant's motion for summary judgment (Doc. 44) is GRANTED in all respects;

(2) the Defendant's motion for involuntary dismissal (Doc. 43) is DENIED as moot; and

(3) the Clerk is directed to enter judgment in favor of The State of Florida Department of Corrections and against Plaintiff LaFreda Gavin, terminate any pending motions, and close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 26th day of April, 2005.

_____
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Pro se party